IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BRETT CIMINO,

      Plaintiff,

v.   No. 1:25-cv-0459 DLM

FRANK BISIGNANO,
COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Brett Cimino's Memorandum Pursuant to Supplemental Rule 3 for Social Security Actions Under 42 U.S.C. § 405(g). (Doc. 11.) Having considered the record, submissions of counsel, and relevant law, the Court will **DENY** the motion.

**I.**      **Procedural History**

On January 17, 2020, Cimino protectively filed an application with the Social Security Administration for a period of disability insurance benefits (DIB) under Title II of the Social Security Act (SSA). (Administrative Record (AR) at 157–60.[1]) Cimino alleged a disability onset date of October 11, 2019. (*Id.* at 204.) His claims were denied initially, upon reconsideration, and again by Administrative Law Judge (ALJ) Jason Mastrangelo. (*See id.* at 7–27, 58–77.) When the Appeals Council denied review, Cimino appealed, and the United States District Court for the District of Rhode Island remanded the matter for further proceedings under Sentence Four of 42 U.S.C. § 405(g). (*See id.* at 1–6, 934.)

On remand, the Appeals Council directed the ALJ to further consider the opinion of state

---

[1] Document 8 contains the sealed Administrative Record. (Doc. 8.) The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

agency psychological consultant Susan Killenberg, M.D.; to further consider Cimino's maximum residual functional capacity; to obtain supplemental evidence from the vocational expert; and to consolidate Cimino's claims with a subsequent application for DIB he filed on September 21, 2022, alleging a disability date of July 16, 2021. (*See id.* at 829–30, 1073.) ALJ Mastrangelo held a second hearing on the consolidated claims and issued an unfavorable decision on November 28, 2023. (*See id.* at 826–92.) The Appeals Council denied review in March 2025 (*see id.* at 801–04), and Cimino appealed (*see* Doc. 1).

## II.     The Sequential Evaluation Process and the ALJ's Findings

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is eligible for disability benefits, the Commissioner follows a sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not "doing substantial gainful activity"; (2) he has a severe impairment or combination of impairments that has lasted or is expected to last for at least one year; and (3) his impairments meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R § 404.1520(a)(4)(i)–(iv); *see also* 20 C.F.R. § 404.1509; *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). RFC is an assessment of how a claimant's impairments affect his capacity to work and of what he "can still do despite . . . [his] limitations." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the claimant meets "the burden of establishing a prima facie

case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient [RFC] to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

At Step One of the process, ALJ Mastrangelo found that Cimino "has not engaged in substantial gainful activity since October 11, 2019, the alleged onset date." (AR at 832 (citing 20 C.F.R. §§ 404.1571–76).)

At Step Two, the ALJ concluded that Cimino "has the following severe impairments: Degenerative disc disease of the cervical spine with chronic denervation/radiculopathy; right upper extremity neuropathy; anxiety and depressive disorders; attention deficit/hyperactivity disorder (ADHD); [and] substance addictions." (*Id.* (citing 20 C.F.R. § 404.1520(c)).) He also considered several other medical issues and found they were non-severe. (*Id.* at 832–33.)

At Step Three, the ALJ found that Cimino "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (*Id.* at 833 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

At Step Four, the ALJ considered the evidence of record and found that Cimino:

has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except[ he] can perform occasional pushing and pulling of hand controls with the right upper extremity; he can frequently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds; He can occasionally crawl; He would be limited to sustaining attention and concentration to carry out simple tasks; He can occasionally interact with coworkers, supervisors and the general public; He can tolerate simple changes in a routine work-setting, and can perform non-pressured work tasks (meaning goal-oriented tasks).

3

(*Id.* at 836.) Based on his review of the record and the testimony of the VE, ALJ Mastrangelo found that Cimino "is unable to perform any past relevant work." (*Id.* at 846 (citing 20 C.F.R. § 404.1565).) The ALJ further found that Cimino can perform other work and therefore has not been under a disability from October 11, 2019, through the date of the decision. (*See id.* at 847–48 (citing 20 C.F.R. §§ 404.1569, 404.1569a, 404.1520(g)).)

### III.    Legal Standard

The Court reviews the Commissioner's decision to determine whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). While a deficiency in either area is grounds for remand, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012), the Court may neither reweigh the evidence nor substitute its judgment for the agency's, *see Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

To decide whether the ALJ applied the correct legal standards, the Court must determine whether he adhered to "the specific rules of law that must be followed in weighing particular types of evidence in disability cases . . . ." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted). To determine whether substantial evidence supports the ALJ's factual findings, the "[C]ourt looks to [the] administrative record and asks whether it contains 'sufficien[t] evidence to support the agency's factual determinations.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). Substantial evidence "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court "may not 'displace

the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.     Discussion

Cimino argues that remand is warranted because the ALJ failed to: (1) adequately incorporate the state agency opinions into the RFC determination; and (2) properly evaluate the opinion of surgeon Eric J. Woodard, M.D. (*See* Doc. 11 at 9–17.)

### A.     The ALJ adequately accounted for the state agency opinions.

Cimino argues that remand is warranted because the ALJ failed to account for moderate limitations the state agency psychological consultants recorded in the worksheet portion of the Mental Health Residual Functional Capacity assessment (MRFC) but did not explicitly address in the narrative portion.[2] (*See* Doc. 11 at 11–13.) At issue are the opined moderate limitations in Cimino's abilities to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," and to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[3] (*Id.* at 11 (quoting AR at 75).) Both Michelle Olson, Psy.D., and Susan Killenberg, M.D., recorded the moderate limitations in the worksheet

---

[2] Previously, state agency consultants recorded their opinions on a form that was "divided into Section I ('Summary Conclusions' containing checkboxes) and Section III ('Functional Capacity Assessment')."*Bernadette S. v. King*, No. 1:24-cv-0124 JB/GJF, 2025 WL 399735, at *5 n.4 (D.N.M. Feb. 5, 2025), *R&R adopted sub nom. Bernadette S. v. Dudek*, 2025 WL 892944 (D.N.M. Mar. 24, 2025) (citing *Vienna v. Saul*, No. 2:18-cv-0783-LF, 2019 WL 4686718, at *4 n.8 (D.N.M. Sept. 26, 2019)). "Although MRFC[ assessments] . . . no longer include the same section labels, 'parties and the courts have continued to refer to the checkbox portion of each MRFC as 'Section I,' and the 'narrative' portion(s) as 'Section III.'" *Id.* (quoting *Vienna*, 2019 WL 4686718, at *4 n.8). "The Court refers herein to these separate sections of the MRFC as the 'worksheet portion' and the 'narrative portion.'"

[3] The Court refers to these categories throughout this opinion as the abilities to "maintain regular attendance" and "complete a normal workday."

portions of the form. In the narrative portions, Dr. Olson opined:

> [Cimino] will have some difficulty maintaining concentration for extended periods due to intrusive anxious thoughts. However, he should have no limitations in working in proximity to others. He retains the mental capacity to carry out simple and/or detailed instructions for two hour periods over an eight hour day at a non pressured work pace, sustain an ordinary routine and make simple work related decisions.

(AR at 66.) Similarly, Killenberg concluded:

> See text above. The [medical evidence of record (MER)] does not indicate any cognitive impairment. The MER documents problems with low and anxious mood, disrupted sleep, low energy, chronic pain, ruminative worry about medical issues, feelings of guilt and hopelessness, a subjective sense of reduced concentration. [Cimino] has sustained work at SGA levels in recent years, through 2019. He is capable of performing all ADL tasks that are not affected by pain. In sum, [he] retains the mental capacity to carry out simple tasks for two hour periods over an 8 hour day/40 hour week at a non pressured work pace. He will be inconsistent in his ability to carry out detailed tasks due to pain, mental symptoms and substance use.

(*Id.* at 75.)

The ALJ found the opinions "mostly persuasive" and provided an adequate (and unchallenged) discussion of supportability and consistency. (*See id.* at 844; *see also* Docs. 11; 15 at 6 (noting that "Plaintiff does not claim that the ALJ failed to comply with [the] applicable legal standard or that his findings lack substantial evidence support in the record"); 16.) The ALJ assessed an RFC limiting Cimino "to sustaining attention and concentration to carry out simple tasks;" occasional interaction with coworkers, supervisors, and the public; only "simple changes" in the work setting; and "non-pressured work tasks (meaning goal-oriented tasks)." (*Id.* at 836.)

Cimino asserts that the consultants' narrative opinions "are silent regarding [his] capacity to maintain" regular attendance or complete a normal workday, and "[t]he RFC contains *no* [related] restrictions . . . ." (*See* Doc. 11 at 11.) He argues that the ALJ erred in failing to explain the discrepancies in the opinions or in omitting the limitations in the RFC, because "an ALJ may

not 'turn a blind eye to moderate . . . limitations'" recorded in the worksheet portion. (*Id.* (quoting *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015)) (citing *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1315 (D.N.M. 2020)).)

The Commissioner, however, argues that challenges to whether the RFC incorporates such moderate limitations as noted in the worksheet portion ask "the wrong question . . . ." (Doc. 15 at 7–8 (quoting *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 447 (10th Cir. 2021)) (subsequent citation omitted).) The question instead, he posits, is whether the ALJ's RFC determination comports with the state agency consultants' conclusions in the narrative. (*See id.*) The parties spar about a point that has created a rift in this district, with well-reasoned decisions on both sides.[4] *See, e.g.*, *Bernadette S. v. King*, No. 1:24-cv-0124 JB/GJF, 2025 WL 399735, at *9–10 (D.N.M. Feb. 5, 2025), *R&R adopted sub nom. Bernadette S. v. Dudek*, 2025 WL 892944 (D.N.M. Mar. 24, 2025); *Leah P. v. Kijakazi*, No. 1:21-cv-0407 SCY, 2022 WL 3042928, at *3–6 (D.N.M. Aug. 2, 2022); *Ortiz v. Kijakazi*, No. 1:21-cv-1016 KK, 2023 WL 2538834, at *3 (D.N.M. Mar. 16, 2023); *Garcia*, 509 F. Supp. 3d at 1314–18; *Vienna v. Saul*, No. 2:18-cv-00783-LF, 2019 WL 4686718, at *6 (D.N.M. Sept. 26, 2019).

The Commissioner's position has merit. "Multiple Tenth Circuit cases have held that an ALJ adequately considers or incorporates a moderate limitation assessed by a physician where the ALJ incorporates how the claimant is limited in the ability to perform work-related activities, even where the ALJ does not expressly repeat the moderate limitations." *See Padilla v. Bisignano*, No. 1:24-cv-0658 KWR/GJF, 2025 WL 2694024, at *12 (D.N.M. Sept. 22, 2025) (gathering cases). In *Smith v. Colvin*, for example, the Tenth Circuit evaluated whether an ALJ erred by incorporating

---

[4] Thankfully, the Tenth Circuit may soon weigh in on the issue, as the decision in *Bernadette S.* is on appeal. *See Sotelo v. Comm'r*, No. 25-2055 (10th Cir. May 27, 2025).

into the RFC limitations a state agency consultant opined in the narrative, but not moderate limitations the same consultant noted in the worksheet. *See* 821 F.3d 1264, 1268–69 (10th Cir. 2016). In that case, the consultant recorded moderate limitations in the claimant's abilities to complete a normal workday, work with others without distraction, perform at a consistent pace without excessive rest periods, and more, but she did not explicitly account for these limitations in the narrative portion. *See id.* Rather, the consultant concluded that the claimant could "engage in work that was limited in complexity and . . . manage social interactions that were not frequent or prolonged." *Id.* at 1268. The ALJ's RFC determination largely mirrored the consultant's narrative opinion, limiting the claimant to "simple, repetitive, and routine tasks" with no face-to-face public contact. *See id.* at 1268–69. The claimant, like Cimino here, maintained it was error for the ALJ to omit these impairments in formulating the RFC. *See id.* at 1268. The Tenth Circuit disagreed and held that the ALJ properly "incorporated the functional limitations of [the claimant's] nonexertional impairments." *See id.* at 1269. The *Smith* court opined that in "question[ing] how the [ALJ's] assessment incorporate[d] the numerous moderate limitations indicated by" the consultant, the claimant was asking "the wrong question." *Id.* at 1269 n.2. The limitations noted in the worksheet portion "serve[] only as an aid to [the consultant's] assessment of [RFC]." *Id.* Courts "compare the [ALJ's] findings to [the consultant's] opinion on [RFC], not her notations of moderate limitations." *Id.*

In *Fannin*, a more recent unpublished case, the Tenth Circuit repeated *Smith*'s admonition to "compare the [ALJ's] findings to [the consultant's] opinion on [RFC], not [his] notations of moderate limitations." 857 F. App'x at 447–48 (quoting *Smith*, 821 F.3d at 1269 n.2). In that case, the Tenth Circuit found no error where the consultant remarked on the worksheet that the claimant had a "'moderate'—that is, 'fair,' ability to complete a normal workday . . . and to perform at a

8

consistent pace without an unreasonable number and length of rest periods," but opined in the narrative that the claimant had "the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions [and] respond appropriately to changes in routine work setting." *Id.* at 448 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.F.2.c).

And in *Padilla*, the court considered *Smith*, *Fannin*, and other Tenth Circuit opinions and concluded that "by restricting [the claimant] to simple, routine tasks and work decisions, with no fast-paced assembly line work that is performed in the same location every day, and with" limited social interaction, the ALJ accounted for the moderate limitations noted on the worksheet, including abilities to complete a normal workday and perform at a consistent pace without rest periods. *See Padilla*, 2025 WL 2694024, at *11–12; *accord Bernadette S.*, 2025 WL 892944, at *5–7; *Leah P.*, 2022 WL 3042928, at *5–6.

Considering this line of authority, I "reject[ the] argument that the ALJ was required to either incorporate all of the doctors' worksheet-style moderate limitations or explain, for each moderate limitation, why []he did not adopt that limitation." *See Leah P.*, 2022 WL 3042928, at *5. "The question is not whether there is a conflict between the RFC and the worksheet-style moderate limitations in attendance or persistence; the question is whether the RFC matches the doctors' opinions on what kind of work Plaintiff can perform despite the doctors' previously assessed limitations." *Id.* (citing *Smith*, 821 F.3d at 1269 n.2). In this case, the RFC limits Cimino to simple tasks, occasional interactions with others, "simple changes" in the work setting, and "non-pressured work tasks." (AR at 836.) These restrictions align with Olson's and Killenberg's opinions that Cimino has difficulty concentrating for extended periods and carrying out detailed tasks, but he can "carry out simple and/or detailed instructions for two hour periods over an eight

9

hour day at a non pressured pace," work near others, and "sustain an ordinary routine and make simple work related decisions." (*Id.* at 66, 75.) In fact, the consultants explicitly affirmed that despite "the sustained concentration and persistence capacities and/or limitations" they assessed, Cimino "retains the mental capacity to carry out" work as they described. (*See* AR at 65–66, 75.) *See also Padilla*, 2025 WL 2694024, at *13 (emphasizing the consultant's conclusion "that 'while . . . *her current moderate limitations* may preclude some work experiences, [the claimant] maintains the ability to perform" work as described); *Leah*, 2022 WL 3042928, at *5 (finding that the consultants "thought [the claimant] could perform simple work despite their own assessment of moderate limitations"). Accordingly, the Court denies the motion with respect to this issue.

> **B.    Cimino has not demonstrated reversible error in the ALJ's analysis of Dr. Woodard's opinions.**

Cimino next argues that "the ALJ failed to provide legally sufficient reasoning for rejecting" Dr. Woodard's opinions. (Doc. 11 at 13–17.) Under the revised regulations, the ALJ must "consider[] the persuasiveness of [all medical] opinions using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other evidence in a claim.'" *See Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). Supportability and consistency "are the most important factors[,]" and the ALJ must explain how he considered those two factors in evaluating medical opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, address the remaining factors. *See id.* The ALJ need only "provide enough detail such that the Court 'can follow the adjudicator's reasoning' and determine whether the 'correct legal standards have been applied.'" *Emerald v. Kijakazi*, No. 22-cv-0470 GBW, 2023 WL 6389075, at *3 (D.N.M. Sept. 30, 2023) (quoting *Keyes-Zachary*,

695 F.3d at 1166) (subsequent citation omitted). Cimino argues that the ALJ's analysis of the supportability and consistency factors was insufficient or erroneous. (*See* Doc. 11 at 13–17.) Having considered the parties' arguments and the relevant law, the Court finds no error and will deny Cimino's motion on this issue.

Dr. Woodard, a neurosurgeon, treated Cimino from March 2019 through August 2023. (*See* AR at 346–69, 1348–62.) Cimino initially presented to Woodard on March 18, 2019, for complaints of neck pain and right arm pain. (*See id.* at 1349.) Woodard assessed cervical spondylosis and advised Cimino to follow up "[i]f he desires surgical intervention." (*Id.* at 1350.) Cimino returned four months later and opted to schedule surgery. (*See id.* at 1351–52.) Woodard performed neck surgery on November 5, 2019.[5] (*See id.* at 346–69.) Cimino returned for four post-operative follow-up visits with Woodard. (*See id.* at 1353–60.) Through March 17, 2021, Woodard consistently recorded that Cimino was "overall doing well" with "[n]o new or worsening neurological symptoms[,]" and his pre-operative symptoms "continue[d] to improve." (*Id.* at 1353, 1355, 1357, 1359.) Cimino testified that after that visit, Woodard told him that he didn't "really need to come back unless [he] need[s] surgery." (*See id.* at 883.)

On August 16, 2023, Woodard evaluated Cimino for worsening neck and left arm pain. (*Id*. at 1361.) Cimino told Woodard that "he is unable to perform at his occupation as a plumber" and asked to discuss a treatment plan. (*Id.*) Noting that Cimino's symptoms had not improved with conservative treatment, Woodard "discussed updating [Cimino's] MRI and CT Scan to rule out" certain issues. (*Id.* at 1361–62.) Woodard ordered an MRI, an x-ray, a CT scan, and a bone SPECT scan and directed Cimino to follow up after obtaining the results. (*See id.* at 1362.)

---

[5] As noted by the ALJ, Woodard opined shortly after surgery that Cimino "should not lift more than five pounds, and that bending and twisting should also be limited." (*See* AR at 843 (citing AR at 348, 1354).)

Also on August 16, 2023, Woodard completed a Physical Medical Source Statement. (*See id.* at 1343–46.) He noted that he sees Cimino annually and diagnosed him with cervical spondylosis and adjacent segment disease. (*Id.* at 1343.) He assessed the following limitations: Cimino can walk for "several blocks" without rest or severe pain; sit or stand for one hour before needing to shift positions; sit or stand/walk less than two hours in an eight-hour workday; needs a job that permits him to shift positions and has periods of walking around; must be allowed to walk for 10–15 minutes every hour and to take frequent unscheduled breaks; can frequently lift 10 pounds or less, rarely lift 20 pounds, and never lift 50 pounds; may never twist, stoop, crouch, or squat, and may rarely climb stairs or ladders; and has significant limitations with reaching, handling, and fingering. (*Id.* at 1344–46.) Woodard opined that Cimino would need to rest "permanently" before he returned to work and that he is "[i]ncapable of even 'low stress' work" because he is "unable to comply [with] occupational requirements." (*Id.* at 1344, 1346.) Strangely, Woodard also opined that Cimino would "never" "be absent from work as a result of the impairments or treatment" if he attempted to work full time. (*Id.* at 1346.)

The ALJ adequately summarized Cimino's treatment history with Woodard, as well as Woodard's Physical Medical Source Statement. (*See id.* at 837–40, 842–44.) The ALJ found Woodard's opinions unpersuasive. (*See id.* at 843.) Cimino contends that the ALJ's analysis was deficient, as the supportability and consistency findings were "erroneous." (Doc. 11 at 13–15.) I disagree.

    **1.    Supportability**

Cimino argues that the ALJ's analysis of the supportability factor is inadequate. (*Id.* at 13–15.) In analyzing supportability, the ALJ must examine how "closely connected" Woodard's opinions are to the evidence and his explanations: "'The more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. § 404.1520c(c)(1). In *Emerald*, for example, the court held that the ALJ adequately evaluated the supportability of a provider's opinion when the ALJ noted the opinion was "supported by [the provider's] mostly unremarkable findings on mental status examination . . . ." *Emerald*, 2023 WL 6389075, at *5. The court found that "the ALJ described [the provider's] medical findings in detail, including several examples of unremarkable exam findings." *Id.* (citation omitted).

Here, the ALJ discussed Woodard's treatment records and found they "provide limited support" for Woodard's opinions, given the improvement Cimino showed after the 2019 surgery. (AR at 843.) The ALJ noted, as an example, that the January 2020 treatment "records show that Dr. Woodard himself observed [Cimino] to exhibit normal range of motion throughout his neck and back, with intact strength in his upper and lower extremities, normal coordination, and a normal gait." (*Id.* at 843–44.) And in August 2023, Woodard "observed . . . decreased range of motion in his neck, with paraspinal muscle spasms, but . . . normal strength and sensation in his upper extremities, with normal range of motion in his shoulders." (*Id.* at 844.) The ALJ also noted that there was "a significant gap in treatment with Dr. Woodard between 2021 and 2023." (*See id.*)

Cimino discusses additional findings from Woodard's records and argues that the ALJ erred by not elaborating more on the supportability finding. (Doc. 11 at 13–14.) He cites[6] *Zambrano v. Kijakazi* for the proposition that "[t]he ALJ must 'provide an explanation that allows

---

[6] He also cites *Correa v. Berryhill*, No. 1:16-cv-1314 LF, 2018 WL 1472480, at *8 (D.N.M. Mar. 26, 2018), but the case is not on point. Not only was it decided before the revised regulations took effect, but Cimino cites to the court's evaluation of the ALJ's credibility determination, an issue which is not raised here. *See Correa*, 2018 WL 1472480, at *8.

the reviewing court to follow his reasoning' and must 'eschew rote analysis and conclusory explanations.'" (*See id.* at 14 (quoting *Zambrano*, No. 1:20-cv-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022)).) In *Zambrano*, however, the ALJ "did not outline [the claimant's treating pain specialist's] opinions . . . or otherwise discuss the contents of his questionnaire[,]" and instead "offered the . . . broad conclusion" that the opinion was "unpersuasive" because the claimant "has less than sedentary limitations" and the opinion "is clearly an overstatement of [her] limitations based on the objective medical evidence." *Zambrano*, 2022 WL 1746765, at *4. The court found this "bare conclusion," bereft of *any* discussion of supportability or consistency, deficient. *See id.* at *5.

Here, as outlined above, the ALJ discussed Woodard's treatment records and opined that his opinion was "overly restrictive in light of" both his own treatment records and other record evidence. (*See* AR at 843.) Cimino emphasizes findings Woodard made on the same day he completed his opinion (*see* Doc. 11 at 14 (citing AR at 1343–44)), but the ALJ specifically recounted findings from that exam (*see* AR at 838, 840, 843). Cimino also argues that the ALJ's reliance on Woodard's 2020 treatment records was error, as those notes were "not relevant" given that his condition later worsened. (*See* Doc. 11 at 13–14.) "While [Cimino] might interpret the record evidence differently than the ALJ has, it is not within this Court's purview to reweigh the evidence." *See Iven v. Kijakazi*, No. 1:21-cv-0541 WJ/DLM, 2023 WL 3762456, at *5 (D.N.M. June 1, 2023), *R&R adopted*, 2023 WL 8643255 (D.N.M. Dec. 14, 2023) (citing *Lax*, 489 F.3d at 1084 (courts may not "displace the agency's choice between two fairly conflicting views")). In sum, the Court finds the ALJ provided specific evidence sufficient to follow his reasoning—i.e., that Woodard's treatment records do not support the restrictive limitations he opined. *See Keyes-Zachary*, 695 F.3d at 1166.

### 2. Consistency

Cimino similarly argues that the ALJ's analysis of the consistency factor is insufficient. (*See* Doc. 11 at 15–17.) In analyzing consistency, the ALJ "compares [the] medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Emerald*, 2023 WL 6389075, at *3 (quoting *Zhu*, 2021 WL 2794533, at *5); *see also* 20 C.F.R. § 404.1520c(c)(2). In *Emerald*, the court determined that the ALJ adequately evaluated the consistency of a medical opinion where the ALJ found it was "consistent with mental health treatment notes showing [the c]laimant is generally stable . . . ." *Emerald*, 2023 WL 6389075, at *5. The court observed that the ALJ had "described [the claimant's] mental health records from other medical providers, including . . . examples of unremarkable findings." *Id.* (citation omitted). Thus, the ALJ's assessment was "specific enough for the Court to review the ALJ's findings, and thus sufficient under the law." *Id.* (internal citation omitted).

Here, the ALJ found that Woodard's opinion was not consistent with record evidence documenting "improvements during [Cimino's] post-operative course of physical therapy" and showing that he "has continued to paint during the relevant period at issue, an activity which requires extensive use of the upper extremities . . . ." (*See* AR at 843.) Cimino argues that the ALJ's consistency discussion omitted references to his continued pain (*see* Doc. 11 at 15), but the ALJ considered Cimino's pain elsewhere in the opinion (*see, e.g.*, AR at 836–38), and "an ALJ is not required to repeat an earlier discussion of the medical evidence when evaluating an opinion or report." *See Matthew H. v. O'Malley*, No. 1:23-cv-0759 MIS/SCY, 2024 WL 3451822, at *7 (D.N.M. July 18, 2024) (citing *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012); *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018)).

15

Cimino also revisits his argument concerning the relevance of earlier improvements shown after surgery. (*See* Doc. 11 at 15–16.) Again, Cimino's "argument amounts to an invitation to reweigh the evidence, an activity in which the Court will not engage." *See Dulcinia P. v. Bisignano*, No. 1:24-cv-0658 KWR/GJF, 2025 WL 2237532, at *15 (D.N.M. Aug. 6, 2025), *R&R adopted sub nom. Padilla v. Bisignano*, 2025 WL 2694024 (D.N.M. Sept. 22, 2025) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) ("In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (a court is to "review only the *sufficiency* of the evidence, not its weight")).

In sum, the Court finds that the ALJ applied the correct legal standards and provided sufficient detail to support his supportability and consistency findings. *See Emerald*, 2023 WL 6389075, at *3 (citations omitted). Accordingly, the Court denies the motion on this issue.

**IT IS HEREBY ORDERED** that Cimino's Memorandum Pursuant to Supplemental Rule 3 for Social Security Actions Under 42 U.S.C. § 405(g) (Doc. 11) is **DENIED**.

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*PRESIDING BY CONSENT*